So we'll, we'll know pronounced job seats who actually I'm glad we recorded that. Thank you. Council or whatever you want to call me. Thank you very much. Of course. Good morning. May it please the court job but seats wash really for appellants Hakeem Meade and Marshall Sookrum. Your honors, this court should hold that we've stated a due process claim and reverse the district courts dismissal on the pleadings because the complaint plausibly alleges both the appearance of bias and actual bias in Judge Bonin's and ETOH's ankle monitoring practices. If I may, your honors, I'd like to discuss two practices that plausibly demonstrate that ankle monitoring decisions were not based on proper considerations such as flight risk or danger to the community, but rather based on ETOH's collection of ankle monitoring fees. One of the district court's errors was in Judge Bonin ordered pretrial defendants to contract with and pay ETOH without disclosing his ties to the company or the availability of alternative providers. It's worth pointing out that he did so in instances including both named plaintiffs where other judges had already decided that they should not be on ankle monitoring. Second, at ETOH's behest, the judge essentially acted as the company's de facto debt collector and he did so in two ways. First, he expressly conditioned release on ankle monitoring on nothing except paying ETOH's fees. And second, even in instances where he did release a defendant with outstanding debts, he continued to threaten jailing in order to coerce continued payment to the company. Your honors, contrary to ETOH's assertion, none of this was, quote, normal. In fact, the complaint details various ways in which this was all quite unusual. First, the complaint explains at paragraph 86 that no other judge in the parish had these practices. Second, the complaint explains that Judge Bonin treated ETOH differently and prioritized the company's collection of fees, especially, in particular, in ways that were different from other financial considerations. And if I may discuss a few instances of that, your honors. At paragraph 94 of the complaint, you'll see that Judge Bonin differentiated ETOH's collection of fees from the court's own costs and fines. He waived the costs and fines but kept the defendant on monitoring in order to coerce payment to the company. Let me ask you something. I can sort of see a difference between money that's owed to someone outside the judicial area. In other words, fines and fees, all of that, that's the judiciary third branch in position. For example, you couldn't say, well, you don't have to pay your bail bondsman. I know you agreed to pay him 10% or whatever, but you don't have to pay that. I mean, I sort of see it in that category. Am I not thinking about that the right way? I just want to make sure I'm understanding the question correctly. Is it the difference between waiving bail fees and waiving court fees? Yes. I mean, because you pay bail to a third party as opposed to the court fees and fines, that sort of thing. I mean, and this is sort of a third party provider, basically. I'm thinking of them as something like a bail bondsman. Is that not a fair analogy? Sure, Your Honor. And I think if Your Honor looks at paragraph 99 of the complaint, you'll see an instance there where Judge Bonin says that he's willing to lower the bail amount, which would lower the amount that the third party bail company would receive, but he makes no such consideration for ETOH's collection of its fees. So that is a direct comparison between a third party vendor for which the judge was lenient and ETOH, a third party vendor with which the judge made no such considerations. So I think that is a second example in which the judge treated ETOH differently and demonstrated at least the appearance of that company in particular. And then there's a third... Lowering the bail fees is a direct consequence of lowering the amount of bail, right? Correct. And so I would think the monitoring fees depend on the length of time that the person is sentenced to serve confinement with the device. And so if you lowered the confinement, you would lower the fees. Correct, Your Honor. Judge Bonin did not set pre-set durations of monitoring. He kind of did it on an ad hoc basis. And what the judge did was expressly condition the duration of ankle monitoring on paying ETOH's fees. That's precisely what happened with Plaintiff Sookrum. That's what happened in paragraph 94 of the complaint with the individual whom Judge Bonin asked, who are you on ankle monitoring with? Upon learning it was ETOH, that's when the judge says, okay, you can come off of monitoring only when you finish paying your debts to the private company. So I think that shows that Judge Bonin's ankle monitoring decisions, especially when people were on monitoring with ETOH, were based on nothing except the company's collection of fees. So all of this conduct, Your Honors, under the circumstances test, when paired with the ties between the judge and the company that are explained at paragraph 64 through 78 of the complaint. Just for the sake of those listening, the judge is no longer party to this lawsuit, right? Correct. You're just suing ETOH. You're not suing the judge. That's correct, because the judge did not remain on the bench. So ETOH is the only remaining party. So all of that conduct, when paired with the ties between the company and Judge Bonin and the fact that the company was regularly asking Judge Bonin to remind defendants of their debts to the company and that Judge Bonin was then doing so and expressly conditioning freedom from pre-trial custody on paying the company's fees, meets the plausibility standard at this stage because it plausibly alleges at least the appearance that Judge Bonin's ankle monitoring decisions were based on ETOH's collection of fees rather than on proper considerations like flight risk and potential danger to the community. Now ETOH, Your Honors, says that the ties explained at paragraph 74 through 78 of the complaint are not enough standing alone to raise a due process claim. But the problem with that and the problem with the district court's analysis is that this case is not just about the ties. This case is about those ties coupled with the judges and the company's actual behavior. All right, remind me, none of the defendants who were monitored appealed the time that they were sentenced to monitoring, if you will, is that correct? Did any of the appealed? They did not, Your Honor. It's worth noting that Judge Bonin concealed from the defendants the fact that he had these ties to the company and it's also worth noting that the Supreme Court made clear in Ward v. Monroeville that the availability of appeal does not cure a due process violation because defendants have a right to fair proceedings in the first instance. So the availability of appeal is not a consideration. That argument was squarely presented and rejected in Ward and it was also the case in this court's decision in Ballard v. Wall that the plaintiff had chosen not to appeal and instead brought a Section 1983 due process claim. Well, just by analogy, let's say I was sentenced to 60 months in prison and I don't appeal my sentence, then after I'm released I sue the judge or somebody else for Section 1983 violation saying I should never have been in prison for 60 months. That would be too. I mean, can you show me a case where that's happened where someone can say, well, my due process rights were violated. I should never have been sentenced to 60 months. I should have been sentenced to probation or 12 months. So I think if the, if the, I don't have a case that says precisely that, Your Honor, because that is a case where the defendant is challenging the Supreme Court said in Toomey is that there's a right to a fair proceeding in the first instance and reiterated in Ward v. Monroeville that the availability of appeal does not cure tainted proceedings in the first instance. So I do think that that case, that scenario is distinguishable because that scenario, you're challenging the sentence. Here you're challenging, here we're challenging the procedures. It's, it's worth pointing out, Your Honors, that this case is not one in which this court has to theorize about the possible temptation, unlike, unlike in Kane and Caliste, because this case is worse because here we have not just the ties, what we also have is those ties plus the judge's actual conduct. Let me interrupt you. So when you say ties, the judge's ties to the company, just to specify exactly what we're talking about, you're talking about, um, some campaign contributions on a few occasions, number one, correct? That's, that's one aspect, Your Honor. You're talking about, uh, the fact that the judge and the company's principals once upon a time were law partners from, I think, 77 to 91. Those are the sum total of the ties you're talking about? There's, there is more, Your Honor. There is the fact that the judge's campaign had an outstanding debt to the company's president, which was, which was not disclosed to defendants, and there is also the fact that Judge Bonin worked together with the, uh, the company's, uh, managers to actually introduce ETOH into the New Orleans judicial system. So I think it's that, the, the totality of, of what Your Honor mentioned and those additional ties, but I, I think this court need not decide in the abstract whether those ties are enough to state a due process claim, because under the totality of circumstances test, we look to the ties plus the way that the procedures actually operated in Judge Bonin's court, and the way those procedures operated was that ankle monitoring decisions were regularly based on nothing except ETOH's collection of its fees. So in these circumstances, you need not decide, you need not decide this case in the abstract. I want to point, point to one other argument that ETOH raises, which is that there were in the relevant period 1,600 people that came before the judge, and only a small percentage of them were ordered to ankle monitor. It's worth pointing out that that 1,600 number does not appear in the complaint, and ETOH never explained where it came from, so it's not properly before this court. But in any event, that is simply not the right number to look at. What this case is about is what Judge Bonin's practices and procedures were with respect to the people he did order to ankle monitoring. So we look to what Judge Bonin did with respect to that group of people, and with respect to that group of people, Judge Bonin's practice was, again, to order them to contract with and pay ETOH, calling the company its special service and refusing to let at least one defendant contract with a different company, and that's at paragraph 97 of the complaint. Judge Bonin ordered people, including both named plaintiffs, to monitoring whom other judges had already decided shouldn't be on monitoring. And then, at the company's behest, the judge regularly acted as its de facto debt collector and based the duration of monitoring on nothing except ETOH's collection of fees. These practices and procedures, Your Honor, demonstrate that Judge Bonin's ankle monitoring decisions, together with ETOH, were on not on proper considerations, but rather on ETOH's collection of fees. The district court erred because it did not consider the totality of these circumstances. It instead treated the facts of Caperton as essentially an on-off switch and said, if your facts are not exactly like those in Caperton, you can't possibly state a due process claim. But Caperton itself teaches that that's not the way to assess these claims. It says that, to quote the Supreme Court, you have to account for new problems that might emerge. And this is a situation that presents precisely those new problems because, in the words of this court in Brown v. Vance, this is a situation where we have the ties and we have those ties then, quote, blossoming into questionable behavior. And the questionable behavior here was Judge Bonin's decisions to, Judge Bonin's practice of making ankle monitoring decisions based solely on the collection of ETOH's fees at the company's behest. If Your Honors have no further questions, I'll save the rest of my time for rebuttal. Thank you very much. Good morning, Your Honors. Dane Cialino on behalf of the Appellee ETOH. Judge Barbier got this right. He properly dismissed this on a Rule 12c motion this court should affirm. Judge Barbier applied the right standard, and the standard is this, and it dates back to 1927, Chief Justice Taft's in Toomey v. State of Ohio, is, is there a possible temptation to the average man as judge to be partial toward one party or the other? And in Toomey, the court found that there was that temptation because the mayor's court, the mayor who presided over the mayor's court, would get paid by the fees he ordered in the court. Likewise, this court in Brown v. Vance, which opposing counsel just mentioned, Judge Wisdom found that there was a temptation for judges in Mississippi who got paid by the volume of the cases they presided over. So if they were finding people guilty of tickets, Judge Wisdom noted that the police officers would file all of their ticket cases in that judge's district. So there the court found that temptation because of the financial incentive to the judges to rule against the litigants before them. In Kane v. White in this court from 2019, their case out of Orleans Parish, the judicial expense fund was the recipient of fines and fees ordered by the criminal district court judges. Well, those fines and fees, the judges control them, they use those monies to pay secretaries and law clerks and whatnot, and this court found that there was a temptation to the judges to impose fines and fees because they got the money in the judicial expense fund. And then finally, also in 2019, in Caliste v. Cantrell, Magistrate Judge Cantrell on the criminal district court would order, impose bonds on people, and 1.8% of the bond fees, the surety bond fees, would come back into the judicial expense fund, and Judge Cantrell was a partial controller of that, and they used those monies to pay law clerks and to pay court reporters. So this court found there was a temptation for judges in criminal district court to impose bail obligations so that they could get money. That's the landscape of the law. It's pretty, it's fairly simple. What is alleged here, and this is the key, there is no allegation that there is some future benefit that would go to Judge Bonin if he put ankle monitors on people. Is it implied about the $1,000 debt? Well, they certainly mentioned the $1,000 debt, but there's no implication that if he orders monitoring that debt's going to go away. I mean, that debt's a debt. So the important thing for similar to the temptations we just talked about from Toomey all the way through the Caliste cases and those cases, and a temptation is, I mean, we all know what a temptation is, but it is, hmm, if I order something today, will I get something in the future? Well, there's no such allegation here. The only allegation here is these people were my friends and my law partners years ago, and they also gave me $9,600. That's all allegations of kind of past, and notice- Well, isn't there, again, an implied that if next time I run for reelection, they will give me another campaign contribution? Exactly, and that's why the Supreme Court has law on that, and the law on that is Caperton. The law on that is Caperton, because if we're going to, and that's the key here, if we're going to look at past connections and relationships and past campaign contributions, we have to evaluate those as Judge Barbea did under the proper standard which is Caperton, and again, just to be absolutely clear and to the record about this, the only allegations are as to past business relationships, and this is a quote from the record at page 60, 62, and 69. They say over and over again, quote, long-standing personal, financial, professional, and political ties. Record page 70, Lenny Levinson was a partner with Mr. Bonin for 10 years, and again, that ended as you pointed out, Judge, back in the 90s, and finally, last allegation as to what would be the temptation, again, past campaign contributions in the amount of roughly $9,600. That's at page 70 of the record. So this is where we're left with by way of allegations. This is the temptation. If I, and again, we have to get into hypothetically into Judge Bonin's head, if I order ankle monitoring today, then what am I going to get in the future? Well, maybe a future campaign contribution, but I'm definitely going to help out an old friend who gave me $9,600. That's what we've got in the pleadings. Well, how do you deal with, what's the law that you evaluate using the due process clause to see whether or not due process is offended by past campaign contributions? Well, that's what Caperton versus Massey-Cole is all about from 2009, and there it's a, like so many due process tests, it's a multifactorial analysis where you have to look at four factors to see whether the campaign contribution was so big that it's going to offend due process, and what are the factors? Well, is the campaign contribution large in size compared to the total contributions and the total amount spent on the election? What effect did the contribution have on the election, and what's the temporal relationship between the campaign contribution, the election, and some pending case? Now, remember what the egregious and exceptional, and those are the Supreme Court's words, not mine, facts of Caperton were. The Cole Company in Caperton had a $50 million judgment against it that was working its way up to the Supreme Court, the state Supreme Court. So the owner of the Cole Company contributes $3 million to one of the candidates for that state Supreme Court seat, $1 million more than the total amount spent by both other campaigns, 300% more than the entire budget of the judge who got the campaign contribution, and that, said the Supreme Court, offended due process because of the, quote, exceptional, extraordinary circumstances. Now, you contrast that to the allegations in this complaint, this first amended complaint, where they allege only $9,600 over the course of more than 10 years given to Judge Bonin. No connection between the campaign contributions and any pending cases, and all campaign contributions well below the $9,600 that we're talking about here, which again, it's, but frankly, Your Honor, it's their burden to plead a claim under Caperton. It's their burden to show that the campaign contributions that were given by ETOH's principles were so high in proportion to the total. Mr. Salino, I'm going to read this so I get it right. Okay. Let's assume the fact that this is an institutional claim about a single judge, and that's not dispositive. Imagine the complaint alleged that Bonin explained he was keeping people on location monitoring and threatening them with prison to benefit his friends at ETOH. Would that complaint stay the claim? If Judge Bonin, if we've got an allegation that Judge Bonin is partial to his old friends because they gave him money in the past and they were his old friends, I think we'd have to, we'd have to look at that under Caperton to see how big the campaign contributions were and how the ties were in the past. I think, well, if we decided it was, why should the result here be different? Well, Your Honor, look at the floodgate issue here, because if what we're going to do is say that there's a due process violation every time a lawyer or a litigant appears before a judge who's an old friend of the judge and who gave money to the judge, and we're going to say that that causes some presumption of partiality toward the old friend, the old campaign contributor, man, that's huge. What are recusals about? Well, recusals are about removing judges who are actually biased or there's an appearance of bias. Removing themselves. Or if they don't do it, some other judge who's appointed to hear the recusal motion should do it. And again, that's got to be taken up on a case-by-case basis by looking at the amount of campaign contributions. Well, I recognize, having been from somewhere else in the state, that Arlene's Parish is different. It starts out with separate criminal and non-criminal cases, but I don't think this would ring true in any of the other 63 parishes. Well, what does ring true in all the 63 parishes, and again, I'm borrowing this argument from Justice Scalia's dissent in Caperton, is that if what we're going to do is say there's a due process violation, and that's going to be a due process violation, then we've got a lot of work to do as lawyers filing these new claims. But that was the dissent. That was the dissent. Indeed, it was. But look what the majority in Caperton did. They were very careful to limit it to the extraordinary and exceptional facts that were presented with these huge campaign donations. Otherwise, every single, and Justice Scalia's dissent limited the discussion to those, I think, 39 states that allow judges to be elected. If we're going to look at those campaign contributions and old friends as grounds for a due process claim, that's a huge floodgate. This isn't just contributions. This is an ongoing business that has to be debtor's prison unless you pay. Well, you know, there's a lot of you go to jail unless you pay in the criminal justice system. If you've got, you're ordered to go to drug testing, and there are a lot of private companies who run drug testing operations for courts all over the country, and if those people don't pay for their private drug testing, what happens to them? Well, their bail gets revoked, and they go to jail. So, I mean, again, if it's purely an inability to pay, there's the equal protection problem of poor versus rich. But if we're just talking generally, there's nothing wrong with telling people they have to pay the cost of some condition of bail, whether that all over America. So, that can't be the basis for the due process violation. The due process violation has got to be founded on that fundamental law that's in Toomey versus Ohio, which is, is there a possible temptation to the average man as judge to be partial to one of the parties? And here, the only things that are alleged in the complaint that cause that temptation are past connections, past campaign contributions, past business connections. That's it. There's nothing alleged that Judge Bonin would get anything, financial benefit, any kind of benefit, today. If he orders ankle monitoring today, he's going to get something tomorrow. And that's what we, that's what's seen in all those other cases that we're talking about out of the U.S. Supreme Court and out of this court. The judge is tempted to find somebody today to get something for her or her court tomorrow. We just don't have that. And for that reason, Judge Barbier got it right. I would respectfully urge that this court affirm Judge Barbier. If there are no questions, I appreciate your time. What about the last point that opposing counsel just made at the podium about there was just no personal benefit to the judge, no personal enrichment to the judge in any form? What do you say? Your Honor, I think as Judge Wiener's questions recognize, it's important here to assess not just the ties alone, but the judge's conduct. And the best I've had some sort of interest like that is what did the judge actually do? Right? So this is what my friend characterizes as the egregious case, or what I would call maybe the rare case in which... This is where I had the disconnect. I mean, assuming the judge may have violated due process rights, how does that tie to ETOH violating the due process rights? I think the evidence is there that they were connected. There seems to be an absence of a link here because the judge was not benefiting from it. Two points, Your Honor. The first is that the district court already found, and ETOH has not cross-appealed, that ETOH was a state actor with respect to its participation in these procedures. ETOH has not at any point challenged its susceptibility to this suit or this due process allegations. I'm not talking about that. I'm talking about what did they do, what did the ETOH do to violate due process? Even if the judge did. It was at ETOH's behest, Your Honor, that Judge Bonin made these ankle monitoring decisions based solely on ETOH's collection of fees. And I would point the court to paragraphs 87 through 90 of the complaint where we explain that ETOH regularly sent Judge Bonin payment status reports and asked the judge with respect to particular defendants, please remind them to pay us. And then what Judge Bonin did was exactly that. He said, if you don't pay, you're at risk of going to jail. And it's important to recognize that, as my friend recognized, that the failure to inquire into ability to pay itself constitutes a due process violation. But where was their complicity in the failure to inquire? I get that, but it was totally, it seems to me, in the judge's control whether you have a hearing about ability to pay or make the inquiry. Where are ETOH's fingerprints on that and say, you know, don't even consider their ability to pay, order them to pay us or else tell them they can't, they don't get their money. It's simply temporal. They asked him to do it and he did it. And I think, especially at this stage of the case... Did you, you're saying they asked him to keep these people monitor on until they paid. Did they ask him to do that? No, Your Honor, that's not an allegation in the complaint. But the reason that ETOH is still susceptible to this claim, and again, they haven't anywhere argued that they're not, is because when you have a company that is a state actor and is participating in an unconstitutional system, it is liable for that system. And that's what the Supreme Court made clear in the case of Addix and others that said even where all that's happening is that the private company is acting at the compulsion of the state, it can still be liable for its participation in that system. I see I'm out of time. If Your questions, I'm happy to answer them. What did they do at the compulsion of the state? What did ETOA do at the compulsion of the state? Oh, I think, Your Honor, that I was merely saying that where the company is only compelled, that's enough. And here, where the company is voluntarily participating in the system, it must be enough. I think we have you argued. Thank you. Thank you, Your Honors.